Before we begin this morning, I just want to extend on behalf of Judge Lurie and myself and the entire court a warm welcome to our visiting judge this morning, Judge Gilstrap. I think he's known as the judge with the largest patent docket in the country, so we're very grateful that he has come this week to help us with our patent docket. So welcome to Judge McDonald. Mr. H, whenever you're ready. May it please the court. The Board of Veterans Appeals in the Veterans Court interpreted Diagnostic Code 5257 as limited to the impairments of recurrent subluxation and lateral instability. This was a legal error that should be reviewed de novo. Yeah, but they also did something else right, and they said even if we're wrong about whether or not this open-ended or not, your client still got the benefit of consideration under the other applicable diagnostic codes. So that was their alternative holding, as I understand it, and I want to know why we even have to reach the legal issue which you correctly presented to us. Yeah, I think that's a good question, and I think you have to take a look at what the court said, and this is at A4 to A5 in the Veterans Court's opinion, and what they said, sort of in the alternative, was that the veteran failed to identify any symptoms that would necessitate the use of a catch-all. But there's two things that I want to say about that. The first is if you look at that portion of the opinion from A4 to A5, there isn't a single site to the record, there isn't a single site to the board, and to the extent the Veterans Court was engaging in fact-finding in the first instance, that's exceeding its jurisdiction, which is improper. Well, that may be true if it were correct, but it seems to me, and I think the government points this out, that the board did make several findings that your client's symptoms were fully covered by the codes other than 52-57. Is that not the case? Well, I think if you're pointing to the argument at the bottom of A4 where the Veterans Court refers to Mitchell v. Shinseki and DeLuca v. Brown, and in that section they say that some of these enumerated impairments are inadequate, but if you look at the underlying cases with the Veterans Court is referring to, if you look at Mitchell and if you look at DeLuca, those cases are specifically looking at diagnostic codes that refer to loss of motion. So, for example, in the Mitchell case, the Mitchell case dealt with limitation of flexion, and the issue before Mitchell was whether or not pain should be considered in making a rating under the code for limitation of flexion. And what the Mitchell court held was that the functional loss under VA regulations that evaluate disability based upon range of motion loss. So, Mitchell and also DeLuca, these were cases that were expressly evaluating disability based upon range of motion loss, i.e. flexion or extension. But 52-57 is not directed to range of motion loss. That's what 52-60 and 52-61 concern. 52-57 is evaluating disability as a catch-all based on other things other than range of motion loss. But 52-57 isn't a catch-all. It refers only to recurrence of luxation or lateral instability, which throws us back to 5003. Well, 52-57 doesn't refer just to those things. It says in the first line... That's all there is. Well, it does say knee impairments other. It is unique among all of the knee diagnostic codes in referring to other impairments. I think it's fair under a plain language interpretation of 52-57 that it is referring to other impairments of the knee. And I have a couple other points that I think buttress that finding. First of all, under Exxon V-Hunt, you have to look at the whole regulation. And if you interpret 52-57 as being limited specifically to recurrence of luxation and lateral instability, then you're reading the other impairment of entirely out of the regulation. It would be the same as if it weren't there. And that's improper. But why doesn't 5003 take care of it? Well, 5003 rates based on specific things. It rates under the terms of 5003, it rates based on limitation of flexion or extension, where you look to 52-60 or 52-61. And if there's not sufficient limitation of flexion, then you look at, I believe, x-ray evidence. But 5003 says when the limitation of motion is non-compensable under the appropriate diagnostic codes, then it's 10%, which is what he got. But I believe it is based specifically on x-ray evidence, evidence of degeneration in that point. It's not based on the many other impairments that the veteran has. For example, the inability to walk more than short distances, the ability to climb stairs, weakness, fatigability. And the interpretation that we're putting forward is not just something that we've come up with. This is consistent with what the board has done in other instances. If you look at the DOE-1 and DOE-2 cases that were appended to our blue brief, in both of those cases, the board interpreted 52-57 as a catch-all. They said so specifically, and they rated the veteran under 52-57, even when there was no evidence of sublimation. The board cases are clearly not binding on anyone, and not on us, but on the Veterans Court, right? I would agree that the board cases are not binding, but this is a position endorsed by the VA, and it shows that there's unpredictability at the board level in the way that this 52-57 is being interpreted. If you were to construe 52-57 as you would like, I mean, it seems a bit chaotic. I mean, there's plenty of confusion as it exists between the diagnostic codes. And what you're saying is the board, then the Veterans Court, have the ability to just put anything in this with no differentiation in terms of severe, moderate, and slight. It's just an open-ended thing, and people are just making it up as they go along, in terms of what range ought to be assigned to some unknown symptom? Well, I mean, I guess there's a couple of responses to that. I mean, the first one is that if you look as it is already with respect to whether something is moderate or severe or mild for recurrent subluxation or lateral instability, there's actually no guidance provided in terms of, well, if there's this much, then you get mild, or if you get this much, then you get moderate. It's already up to sort of medical professionals in the VA system who are making a determination in terms of what the appropriate rating level is. But it's a heck of a lot more detailed than what you're saying this diagnostic code would allow in other instances, right? I mean, it identifies the symptom, it identifies the level of severity, and then what percentage of disability goes with each level. You're right. Anything could be more detailed. But this is far more detailed than what you're advocating, which is nothing, right? No guidance whatsoever. Well, certainly there would still be mild, moderate, and severe, and I think it would be up to the medical professionals to make an appropriate determination in view of the symptomology that the veterans exhibit. In other words, you're hanging your entire hat on the word other. There's no specifics, and you're hanging your entire argument on other. And really what you're telling us is other means everything else, because other might be some other, but not everything else other. So how do we know the parameters of other? That's right. If there's a need disability that is not otherwise rated in the diagnostic codes, then it would be appropriate to use 5257 as a catch-all, as the board has done in other instances for this code. And why was the author of the code not better served to have said, and anything not covered by the above codes? Why just the simple word other? I mean, it really gives us no guidance where it starts or where it stops. Well, I mean, I think there's two things. I mean, I agree that, again, you have to look at the entire regulation, and the alternative construction that you're proposing is just to remove that term altogether from the regulation. If it's just limited to recurrent subluxation and lateral instability, there wouldn't be no reason to include other at all. It has to mean something. But if there's a reason to include other, we need some guidance as to what other should be. Is it everything else? Is it part of what is not otherwise covered? Where does it start and where does it stop? We've got no guidance. There are many different medical disabilities that veterans suffer that are not expressly compensated on – that are not expressly described in the diagnostic codes. There is a real need for a catch-all to cover those types of things. And keep in mind that in other instances, with respect to the foot, with respect to the humerus, the veterans court has interpreted that language, the word other, other impairment of, as a catch-all. That hurts your case. It doesn't help you. When you juxtapose the language in this code to 5284, there's a reason, as Judge Gilstrap pointed out, to construe it differently because they don't list a symptom at all. So clearly it suggests that this applies to all other that are not listed elsewhere. Whereas I think when you juxtapose that to what 5257 says, it makes clear that 5257 is more limited. Why not? Well, I think, first of all, if you look at 5202, which says humerus, other impairment of, that's been interpreted by the veterans court as a catch-all, even though 5202 includes an enumerated list of impairments. So in Kalecki-Shinseki from the veterans court in 2011, the veterans court determined that the board erred by not addressing whether or not a sternoclavicular sprain should have been considered under 5202, even though it's not one of the impairments that's listed. So the veterans court, in the context of the Kaleck case, applied an interpretation to a very similar regulation that is precisely analogous to what we're arguing in this instance. Additionally, I think in interpreting the regulations, I think that the veterans canon is something that should be considered, and that's what the Supreme Court has expressed multiple times, that under the veterans canon, interpreted doubt must be resolved in the veterans' favor. So here, there's a situation where you have the board, in, for example, the Doe cases, applying the interpretation of 5257 that we're endorsing as appropriate, and in other cases, and specifically in this case for Mr. Delisle, they did not give him the benefit of the doubt. And I think to the extent that there is a controversy in terms of how 5257 should be interpreted, the veterans canon should come into play. Let me ask you this, counsel. You argued a minute ago that there was a real need for this catch-all. Are you telling the court that we should be directed and controlled by what the need is? Should we become authors in place of the people that wrote these codes to begin with? Or should we be limited to a proper construction of what has been written under the ordinary rules of interpretation? I think that the code as written contemplates this possibility by including catch-alls, by including catch-alls for the knee, by including catch-alls for the foot, by including catch-alls for the humorist. But don't these other catch-alls say, other without other, that example one, example two, example three? Not in the case of the humorist. It's precisely the same as what we're arguing here. Okay, why don't we save the rest of your rebuttal and have a new friend on the government's side. Thank you. Thank you. May it please the court, I'd like to pick up on that last point about 5202 in the Callis case. If you actually read that Callis case, it goes on to hold that any error was not prejudicial because there was no evidence that the veteran suffered from the listed symptoms and limitations. So that supports the conclusion that when, as with 5257, the diagnostic code lists specific symptoms and limitations under the general other heading, you need evidence of those specific symptoms and limitations in order to be entitled for rating. But I think the more fundamental problem that Mr. Delaro's argument suffers from is that it ignores the fact that in assigning the 10% rating under 5003, the board was including the other things he points to, such as fatigue, weakness, and lack of endurance. If you look at page 822 of the joint appendix, which is the board's decision, it makes clear that that 10% rating includes consideration of pain, fatigue, etc. So when the veterans court is describing that the limitation on motion diagnostic codes include things such as pain and fatigue, it's referring to the fact that diagnostic code 5003, which is the limitation on motion diagnostic code, includes the other things he's identifying, such as pain, fatigue, and lack of endurance. What about your friend's argument at the tail end about the Supreme Court's guidance that if there's interpretive doubt, we have to go for the veteran? Because it seems there's a strong argument that even if we agree with you in the veterans court in terms of the interpretation of 5257, there's some ambiguity, as there is in most things. So what do we do if we conclude there's an ambiguity? Are we required or compelled to go for the veteran in that circumstance? No, the standard is not if there's any ambiguity. It's only when there's interpretive doubt after you've already gone through all the tools available. Namely, first you look at the plain language, and then you look at the, in this case, since you have a Department of Veterans Affairs interpretation, giving due deference to that interpretation under Eisenstein and Cathedral-Candle, and looking at the case law. Only if, looking at these tools, there's still doubt, then the tie goes to the veteran. That's all the Supreme Court cases stand for. And I would like to point out, regarding the deference point, the issue here isn't whether Chevron deference applies, because that only addresses statutory interpretation. Here we're dealing with the interpretation of a regulation. And there is a general counsel's opinion that makes clear, for the reasons this Court's expressed, that when you have, you don't use unspecified criteria, because that just creates ambiguity and inconsistent opinions. And so under Eisenstein and Cathedral-Candle, this Court should defer to that interpretation, since it's consistent with the plain language. Do you think 5257, which refers to other, only covers what is listed? Yes. You have to give meaning to both terms. Mr. Delisle wants the courts only read that word, other. But it includes both other and lateral instability. Then why wouldn't it read 5257, knee impairment, recurrent subluxation? It could, but it used the word other, and then the issue is, how can you read that? Can you read that consistent with the rest of the regulation? And you can, because subluxation and instability are other knee disabilities. So it's really referring to a subset of the type of other knees that you need to have those symptoms in order to qualify. Let me ask you this, counsel. If the board gave the benefit to the veteran per arguendo, saying this is a catch-all, why shouldn't we? If the board did it, why shouldn't we? Why is it not a catch-all if the board gave the consideration, at least hypothetically, that it was? Because that was an alternative holding. The Veterans Court first found as a legal matter that it wasn't a catch-all, but then it concluded that even if it wasn't. So the Veterans Court wasn't relying on the benefit of interpretive doubt. It was merely making a second holding. So they just did that for fun. There was no reason for them to do that. They could have relied on either fact. I believe courts frequently have alternative holdings because they find multiple problems with an argument. And because they didn't trust where we might go. Well, Your Honor can say that. And you're saying the general counsel's opinion, discussing 5257 does not indicate that it's a catch-all? Not in the sense that Mr. Delisle is using it. It requires that you have those symptoms and limitations of sublocation and instability. And Mr. Delisle attempts to distinguish that by claiming that the general counsel is only addressing Diagnostic Code 5003. But the issue, when you read the statement in the context of the entire paragraph, it's clear. They're referring to both Diagnostic Codes. Because the issue he was confronting was whether either Diagnostic Code 5257 or Diagnostic Code 5003 included unspecified criteria, such that there was overlapping symptomatology. So what kind of deference is due to... I mean, there's so many different names of deference here. What is the deference due to the general counsel's opinion? I quoted Eisenstein, Cathedral Candor, but it's basically this court refused it, so I don't believe that there's clear error given the plain language, even if this court gets to the legal issue. Really, your position from the beginning is we just don't have any jurisdiction to begin with. Correct, because of the alternative holding, which is a fact-based holding, this court does not possess jurisdiction. Seems like the world might benefit by our opining on this catch-all instance, right? It seems like it keeps coming up, and both the board and the veterans' court aren't entirely clear on what they're to do. Certainly, but that's not a basis for jurisdiction. But I agree, Your Honor. But if a legal issue, if an interpretive issue was raised, that's a basis for jurisdiction. But if there's an alternative factual holding that disposes of the claim, then even if Your Honor's were to rule in his favor, on the legal issue, you wouldn't be able to reverse the veterans' court on that alternative grounds. So at that point, it would just be an advisory opinion. As Your Honor pointed out, that would basically be reaching unnecessarily duplicative holdings. If Your Honor has no further questions, we respectfully request that this court dismiss this appeal for lack of jurisdiction or any alternative from the veterans' court. Thank you. Okay, a couple points. First of all, with respect to the VA opinion of the general counsel, it really doesn't address the relevant question in terms of whether 5257 should be applied as a catch-all or not. That's not what's addressed in that opinion. Furthermore, we submit the logic of that opinion is actually supportive of our position. Essentially, what the general counsel concluded was that it was appropriate to rate on multiple different ratings. In that case, 5003 and 5257, when the symptomology is different. And in this case, what we are arguing is that it's appropriate to rate on 5257 as a catch-all, specifically meaning when it's not expressly called out in another diagnostic code, it's appropriate to rate in this code. With respect to counsel's reference to Cathedral Candle, in this case, I think, if anything, the opinion of the VA is certainly divided in that the board opinions that we cite, which are VA board opinions, apply 5257 as a catch-all expressly. So I don't think that there's a question of appropriate deference here to be found. Finally, with respect to their argument there is no jurisdiction, but there's an alternative fact ruling. Two points. Again, that alternative fact ruling doesn't cite to any facts in the record. It doesn't cite to the board. It doesn't cite to the record. To the extent it is a fact-based ruling, it was inappropriate for the Veterans Court to make that ruling in the first instance. In the second point, to the extent that it's an alternative legal conclusion, it is also wrong. And I urge you to reconsider the Mitchell case and reconsider the DeLuca case and look at what they were expressly covering. Thank you. We have the honor to thank both counsel and the cases submitted.